## PARISH'S ADM'R *vs.* BALKUM.

[DETINUE FOR SLAVE.]

1. *Chancery decree under act of* 1846, *settling property on trustee for married woman; continuance of trustee's title.*—Where a bill in chancery is filed under the provisions of the act approved February 14, 1846, entitled, "An act to protect the rights of married women"; and a decree is therein rendered, by which the wife's distributive interest in a decedent's estate is settled upon a trustee, "for her sole and separate use and support, and for the support and maintenance of her family"; the trust does not terminate on the death of the husband, but continues during the life of the wife.

2. *Who is proper party plaintiff.*—An action of detinue for a slave, who was settled by a decree in chancery, under the provisions of the act of 1846, on a trustee, for the "sole and separate use and support" of a married woman, "and for the support and maintenance of her family"; and who, after the death of her husband, and her subsequent marriage, went into the possession of her second husband,—should be brought in the name of the trustee, and not in the name of the second husband.

APPEAL from the Circuit Court of Henry.
Tried before the Hon. J. McCALEB WILEY.

THIS action was brought by Roger Parish, "as trustee for Annis Parish, his wife," against James W. Balkum, to recover a slave named Edmund, together with damages for his detention; and was commenced on the 23d March, 1861. The plaintiff died in the summer of 1865, and the suit was afterwards revived in the name of John Hutto, as his administrator. "On the trial," as the bill of exceptions states, "the defendant demurred to the complaint, on the ground, that the suit could not be revived against him in the name of said Hutto, as administrator, because the complaint alleges suit as trustee for Annis Parish, the wife of said Roger Parish, and there is no survivorship in the personal representative." The court sustained the demurrer, but allowed the plaintiff to amend his complaint by adding the following averments: "which said slave is the separate
18

estate of his wife, Annis Parish, and which, by virtue of his marriage with said Annis Parish, he reduced to possession before the detention by the defendant, and which is now in the possession of the said defendant."

The defendant demurred to the amended complaint, "because said suit cannot be revived in the name of said John Hutto, as the personal representative of said deceased plaintiff, because the complaint alleges that said suit is for said slave as the separate estate of his said wife." The court overruled the demurrer, and the defendant then filed nine pleas. The court sustained a demurrer to the second and sixth pleas. The other pleas were—"1st, that this suit could not be revived in the name of the personal representative of said deceased plaintiff, because the suit is for the separate estate of Annis Parish, his wife"; "3d, that upon the death of said Roger Parish, deceased, the said slave vested in Mrs. Annis Parish, and did not become assets of said decedent's estate, which entitled said personal representative to recover either said slave or his hire; 4th, that said Roger Parish was not entitled to sue for and recover said slave at the time the suit was brought; 5th, that at the commencement of this suit, and for many years prior thereto, the said slave vested in Silas Nordon, as trustee, under and by virtue of a decree of the chancery court at Abbeville, rendered at the fall term, 1846; and said defendant held said slave, at the commencement of this suit, under and by virtue of a contract for hiring from said trustee, and therefore plaintiff cannot recover either said slave or his hire;" "7th, that said Roger Parish and Annis Parish were married on the 19th day of January, 1860, and said Annis held and owned said slave, at and after said marriage, as her sole and separate estate; 8th, that at the bringing of this suit, Catherine Ward, Edy Hutto, wife of Martin Hutto, and Ligon Ward, owned an interest in said slaves and their hire, and were not joined in this action; 9th, the general issue, in short by consent." The plaintiff demurred to the seventh plea, and reserved an exception to the overruling of his demurrer; and issue was then joined on all these pleas.

The evidence adduced on the trial showed that the slave

in controversy once belonged to William Norris, who was the father of Mrs. Annis Parish ; that on the 27th October, 1846, the said Annis, then the wife of William Ward, filed a bill in chancery against her husband and the administrators of the estate of her deceased father, for the purpose of having her distributive interest in said estate "secured to her for the benefit of herself and children"; that a decree was rendered in said cause, in November, 1846, by which it was "ordered, adjudged, and decreed, that the complainant's distributive share in the estate of her father, William Norris, deceased, be vested in Silas Nordon, as trustee, for her sole and separate use and support,·and for the support and maintenance of her family"; that the slave in controversy was a part of the property secured to said Annis under this decree ; that the said William Ward afterwards died, and his widow married said Roger Parish, in January, 1860; that the slave was in the possession of said Roger Parish for some time after said marriage, but ran away from him, and was in the defendant's possession at the commencement of the suit. The court charged the jury, "that the said decree in chancery vested the legal title to said slave in said Silas Nordon, as trustee of Mrs. Ward, now Mrs. Parish ; that said decree created a separate estate in her for life, with remainder over to her children ; that the death of said William Ward did not terminate the trust ; that the legal title was still in Nordon, the trustee ; and that on the death of Mrs. Parish, the estate, if any was left, would have to be administered and distributed among her children." The plaintiff excepted to this charge, and he now assigns it as error, together with other matters which require no particular notice.

W. C. OATES, for appellant.
MARTIN & SAYRE, contra.

JUDGE, J.—The slave sued for in this case was settled by a decree of the court of chancery, upon a trustee, "for the sole and separate use and support" of Annis Ward, who was at the time the wife of William Ward ; and "for the support and maintenance of her family." The bill was filed,

and the decree rendered, under the provisions of "An act to protect the rights of married women," approved the 14th of February, 1846.—Acts, 1845-6, p. 23.

A married woman, for whose use property has been settled under the provisions of this act, has the right, by the terms of the act, "to dispose of any such property, real or personal, by will; and in case of her death without having made such disposition, the same shall be divided and distributed as in other cases of intestacy."

After the decree of the court of chancery was rendered, the husband of Annis Ward died, and she intermarried with Roger Parish, the original plaintiff in this suit, who, after his marriage, and prior to the commencement of the suit, had the slave for some time in his possession. It is contended that, on the death of the first husband of Annis, the trust terminated, and that the legal and equitable estate then became united in her. If this proposition be correct, then, on the intermarriage of Annis with Roger Parish, in January, 1860, the property became her separate estate, under section 1982 of the Code; and in that event, the suit should have been instituted in the name of the wife alone, under section 2131 of the Code, as construed in *Pickens and Wife v. Oliver*, 29 Ala. 528. It is only *where no trustee has been appointed* for a married woman, in a settlement of property to her sole and separate use, *otherwise than by statute*, that the husband alone has the right of action, after he has reduced the property to possession.—*Gerald and Wife v. McKenzie*, 27 Ala. 166; *Friend v. Oliver*, 27 Ala. 532; *Pickens and Wife v. Oliver, supra.*

But, under the provisions of the act of February, 1846, the trust did not terminate on the death of the first husband of Annis. It is clear, we think, that the act contemplates a continuance of the trust, in all cases of a settlement of property under its provisions, *during the life of the wife.* That this is the proper construction, is made manifest by the power of disposition given to the wife by will; and in case of her death, without having made such disposition, by providing how the property shall be disposed of. Until the event last named occurs, the purposes of the trust are not accomplished. Were we to hold otherwise, we

would add a new limitation, not contemplated by the act, restricting the trust to the period of coverture; and this we have no authority to do.—*Witter v. Dudley*, 36 Ala. 135, and authorities there cited.

If, then, the slave sued for was wrongfully detained, who was the proper person to institute the suit? We think there can be no doubt that Silas Nordon, the trustee, was the proper person. The decree vested the legal title in him, and it was not necessary, as is supposed, that he should have given bond before this part of the decree become operative; the decree made no such requirement. At the time of the commencement of the suit, we are not informed that the trustee had either resigned or been removed; and the objects of the trust not having been at an end, the legal title remained in him, and he alone could have instituted the action.—*Rice v. Burnet*, 1 Spear's Eq. 590 : *Schley v. Lyon*, 6 Georgia, 530; *Harley v. Platts*, 6 Rich. L. 315; Hill on Trustees, 236.

Our decision upon this question disposes of the entire case, and renders it unnecessary to notice the other questions presented by the record, and argued by counsel.

Let the judgment be affirmed.